194

## Rosenthal v. Radetsky et al.

*Robert M. Bernstein,* for plaintiff.
*Raymond A. White, Jr.,* and *Maurice W. Sloan,* for defendants.

GORDON, JR., J., December 12, 1933.—The motion for judgment n. o. v. was overruled in this case because a question of fact was involved which required determination by the jury; and the rule for a new trial was discharged because we saw no error either in the admission of evidence or in the charge of the court, and were of opinion that the verdict of the jury was fully justified by the evidence.

While the defendant, Radetsky, was operating his automobile in the State of New York with the plaintiff, Julia Rosenthal, as his guest, he became involved in a collision with another car, and Miss Rosenthal, having been injured in the accident, brought this suit for damages against the defendant. The defendant reported the accident to the garnishee, the defendant insurance company, which has repudiated liability under the policy on the ground that the defendant failed to coöperate with it in the defense of the case, as he had contracted to do in the policy. After recovering a verdict against the defendant, the plaintiff issued an attachment sur judgment against the insurance company. Interrogatories were filed, and the company in its answer denied liability under the policy on the above ground. The case then went to trial on this issue, and the verdict of the jury was in favor of the company.

We will consider, first, the motion for judgment n. o. v. The company presented evidence that one of its representatives called at Radetsky's home on numerous occasions (10 or 15 in number), after receipt of notice of the accident, in order to secure a statement from him of the circumstances of the accident, and in his absence left requests that he communicate with it to arrange an appointment. The circumstances of the visits and the failure of Radetsky to communicate with the company strongly suggested that he was evading the interview which the defendant company's agent was seeking to have with him. At last, however, the company's agent met him at the school where he was employed as a teacher. Radetsky then gave the company's representative an oral statement of the circumstances of the accident, which he refused to sign

when it was reduced to writing, upon the ground that "he didn't sign any papers". This statement furnishes little if any information respecting the causes of the accident. It gives in considerable detail a description of the injuries to his friend and guest who was suing him, but, so far as the accident and its causes were concerned, all that the statement says is: "I was driving at about an average of 25 miles per hour. About 2 miles north of Newburgh I was approaching a slight turn and driving on the right side of the road about 20 miles per hour, and then a machine crashed into the left side of my car at the front door and my car overturned on its right side." The company's agent testified that he asked Radetsky "where the other car was coming from; how fast he was going; which way he was going; whether the accident occurred at a crossing; was it dark or light at the time the accident occurred; were there any lights on the other machine;" and that to all of these questions, except the one relating to speed, Radetsky replied that he did not know. The defendant company also proved, inter alia, that shortly after the accident Radetsky had told one Morris Sharp, who was engaged in the garage business in New York State and who had removed the defendant's car from the scene of the accident, that he was "traveling along the road on his own side when the other car came from behind a parked car; that he got over as far as he could, but the other car ran into the side of his car and turned him over." The defendant company further proved by a justice of the peace of New York State who, about a month after the accident, held a hearing of the operator of the other car, against whom Radetsky had sworn out a warrant, that Radetsky testified at the hearing that he "was proceeding south on 9-W State Highway in Balmville on west side of highway. Car of defendant approaching from south; from behind a car of complainant, overturned his car on its side, causing property damage to his car and injuries to occupants." This evidence, as to which, of course, there were denials by Radetsky, clearly indicates that Radetsky had deliberately falsified to the company's agent and endeavored to deceive and hamper its defense of the case, when he asserted ignorance as to the questions asked him by the agent. It was for the jury, therefore, to say whether there had been a failure on the part of Radetsky to coöperate in the defense of the case. The trial judge told the jury, in substance, that if an insured, knowing facts which are of value to the defense of a case, wilfully conceals them and falsely asserts a complete lack of knowledge respecting them, such deception amounts to a failure to coöperate, which would justify a verdict in favor of an insurance company so deceived. On the other hand, he also instructed the jury that, if Radetsky fairly told the agent all he knew respecting the accident and truthfully answered those questions to which he replied that he did not know, he did not fail to coöperate as the policy required; and, in that event, the plaintiff would be entitled to a verdict against the garnishee. This issue the jury resolved in favor of the defendant, and we cannot say as a matter of law that such deliberate deception did not constitute a defense to the attachment.

The fact that the evidence disclosing this defense was not secured by the company until after the trial of the case against Radetsky does not defeat its right to rely upon that evidence as a defense to the action. If Radetsky did falsify in giving his statement to the company and did conceal from it evidence relevant and vital to its defense of the case, his conduct was none the less uncoöperative because his want of fidelity to his insurer was not discovered until a later date. The circumstances of the visits of the company's agent to his house, its repeated abortive efforts to get in touch with him, and his refusal to sign the statement which he gave to it, cast grave doubt upon the bona fides of his coöperation, although these circumstances alone might not have been sufficient

196

to justify repudiation by the company. They are highly suggestive, however, and serve at least to strengthen the conclusion that he was doing all he could to avoid having a verdict rendered in his favor and against his friend and guest. So also the fact that, after the company had repudiated liability and refused to defend the suit, Radetsky, through his attorney, wrote to it formally demanding that it defend the case and "offering to coöperate", does not deprive the company of its defense. As said by the trial judge in substance, in his charge, a deception once practiced is not cured by a mere assertion of a willingness to coöperate. The least that such a falsifier could do to evidence a genuine willingness to coöperate would be to advise the company of his misstatement and to correct it by informing it of the truth respecting his knowledge of the facts of the accident. Anything less would be only lip-service to the shadow of a duty.

It is difficult to review the evidence in this case without coming to the same conclusion as that reached by the jury. The plaintiff was injured while in a car driven by her friend. His version of the occurrence given in a judicial proceeding in New York, and to the garage man within a week of the accident, exculpated him from liability. Nevertheless, when his friend and guest sued him, he concealed from his company his full knowledge of the accident, a knowledge which, if testified to and believed, would have defeated her recovery, avoided interviews with his insurance company, and refused to sign the essentially misleading and false statement of the accident which he finally gave to it. The conclusion from these facts is irresistible, not only that Radetsky did not coöperate with the insurance company as his policy required, but also that he was secretly hostile to it, and, while preserving the appearance of an ally in a common cause, was actively endeavoring to promote the interests of his friend and adversary at the expense of his insurance company.

For these reasons, the motion for judgment n. o. v. was overruled and the rule for a new trial discharged.